FILED

98 AUG 10 AM 10: 25

U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| THOMAS O. VINCENT and<br>MILDRED VINCENT, | } } } } | |
| Plaintiffs, | } } | |
| v. | } } | CASE NO. CV 98-B-0284-S |
| MEDICARE COMPLETE, UNITED<br>HEALTHCARE OF ALABAMA,<br>INC., JOHN WOOD, JR., | } } } } | |
| Defendants. | } | |

ENTERED

AUG 1 0 1998

## MEMORANDUM OPINION

Currently before the court is the Motion of the plaintiffs, Thomas O. Vincent and Mildred Vincent ("plaintiffs" or "the Vincents") to Remand. Also before the court is the Motion of the defendants Medicare Complete, United Healthcare of Alabama, and John Wood, Jr. ("defendants") to Dismiss, or, in the Alternative, for Summary Judgment. Upon consideration of the record, the submissions of the parties, the argument of counsel, and the relevant law, the court is of the opinion that plaintiffs' Motion to Remand is due to be granted. Defendants' Motion to Dismiss, or, in the Alternative, for Summary Judgment is therefore rendered moot.

Plaintiffs originally filed their complaint in state court, bringing claims against defendants for fraudulent misrepresentation, suppression and concealment, and conversion. Defendants timely removed the action to this court, on the basis that plaintiffs' claims are preempted by the Medicare Act. Plaintiffs now move to have their claims remanded to state court on the basis that this court does not have jurisdiction of the action because plaintiffs'

state law claims are not preempted by the Medicare Act.

## FACTUAL SUMMARY

According to plaintiffs' complaint, in the summer of 1996 John Wood, Jr., a named defendant and the sales representative of Medicare Complete and/or United Healthcare of Alabama, Inc.[1] ("United"), solicited the Vincents and convinced them to exchange their existing Medicare supplement coverage with a plan of coverage issued by defendants. (Compl. ¶¶ 1-11.)

Plaintiffs contend that they discussed their concerns with Wood about exchanging their existing coverage for defendants' coverage. They explained to Wood that Ms. Vincent required home health care services on an ongoing basis and that these services were performed by a provider with whom the Vincents had developed a good relationship. (Compl. ¶ 10.) According to the Vincents, Wood then informed them that, although defendants did not have a relationship with the Vincents' current provider, if the Vincents purchased coverage from defendants, "everything would be taken care of." (*Id.*) Plaintiffs further contend they told Wood that, although they resided in Blount County, Alabama, they were expecting to move to the community of Indian Springs, Alabama, in the future. (Compl. ¶ 9.) According to plaintiffs, Wood told the Vincents that although defendants Medicare Complete and/or United Healthcare of Alabama did not have a satisfactory group of participating providers in Blount County, this was defendants' problem and they would take care of it. (*Id.*)

---

[1] United's Medicare Complete Program is a federally-approved HMO under the Medicare Act. (Williams Aff. ¶ 2.)

2

Plaintiffs claim that, in reliance on the representations made by defendant Wood, they agreed to exchange their coverage for that offered by Medicare Complete and/or United Healthcare of Alabama. (Compl. ¶ 11.) They then filled out an application for coverage and paid the initial premium to Wood. (*Id.*) The Vincents claim that, although a policy was never delivered to them, coverage was issued to them with an effective date of September 1, 1996. (Compl. ¶ 12.) During the month of September Ms. Vincent incurred charges for services performed by her home health care provider. (Compl. ¶ 13.) She was later informed that defendants' plan did not afford coverage for the bill submitted by her provider. (*Id.*) Plaintiffs claim that such denial of coverage caused them to incur unnecessary expenses and further caused plaintiffs anxiety relating to the unpaid bills. (Compl. ¶ 14.)

Plaintiffs filed suit in the Circuit Court of Jefferson County, Alabama, on December 19, 1997, alleging that defendants had collectively committed the common law torts of fraudulent misrepresentation, suppression and concealment, and conversion in inducing plaintiffs to exchange their coverage for defendants' coverage. (Compl. ¶¶ 15, 18, 21.)

Defendants removed the case to this court on February 9, 1998, claiming that plaintiffs' claims are preempted by the Medicare Act, codified at 42 U.S.C. §§ 1395-1399. (Defs.' Notice of Removal ¶¶ 3-5.) In support of this contention, defendants argue that, because the Vincents' claims are inextricably intertwined with their claim for Medicare benefits, their claims are completely preempted by Congress' regulation of claims for Medicare benefits contained in the Medicare Act. Defendants have also filed a Motion to Dismiss, or, in the Alternative, for Summary Judgment, claiming that this court lacks subject matter jurisdiction on the basis of complete preemption and plaintiffs' failure to exhaust

mandatory administrative remedies.

## DISCUSSION

Defendants argue that the Vincents' claims for fraudulent misrepresentation, suppression and concealment, and conversion are preempted by the Medicare Act. The Medicare Act is found in Part A of Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1399, and provides insurance for the cost of certain hospital and related post-hospital expenses to eligible Medicare beneficiaries.

Judicial review of benefit determinations under the Medicare Act is authorized by 42 U.S.C. § 1395ff(b)(1), which provides for judicial review only after the Secretary renders a final decision on the claim, in the same manner as claims arising under the Social Security Act.

In addition, even when judicial review is available it is strictly limited. Section 1395ii of Title 42 applies the proscriptions of 42 U.S.C. § 405(h) to the Medicare Act. Section 405(h) states as follows:

> The findings and decision of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Secretary shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Secretary, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover any claim arising under this subchapter.

42 U.S.C. § 405(h).

Discussing this provision, the Supreme Court of the United States has held that the appropriate inquiry in determining whether § 405(h) bars federal question jurisdiction must be

4

whether the claim "arises under" the Medicare Act. The Court states that:

> [t]he third sentence of 42 U.S.C. § 405(h), made applicable to the Medicare Act by 42 U.S.C. § 1395ii, provides that § 405(g), to the exclusion of 28 U.S.C. § 1331, is the sole avenue for judicial review of all "claim[s] arising under" the Medicare Act. Thus, to be true to the language of the statute, the inquiry in determining whether § 405(h) bars federal-question jurisdiction must be whether the claim "arises under" the Act . . .

*Heckler v. Ringer*, 466 U.S. 602, 614-615 (1984)(internal citations omitted). The *Ringer* opinion further explains that a claim "arises under" the Medicare Act if the claim is "inextricably intertwined" with "what in essence is a claim for benefits" under the Act. *Ringer*, 466 U.S. at 624. Therefore, the court must determine whether plaintiffs' state law tort claims "arise under" and are therefore preempted by the Medicare Act.

The court finds that this case is due to be remanded to state court because the Vincents' claims do not "arise under" the Medicare Act. The court agrees with defendants that the Medicare Act broadly preempts claims that are "inextricably intertwined" with a claim for benefits. *See, e.g., Heckler v. Ringer*, 466 U.S. 602, 615-617 (1984)(holding that respondents' claims for declaratory and injunctive relief arose under and were subject to the mandatory administrative remedies of the Medicare Act where the Act provided an adequate remedy for challenging the denial of respondents' claims); *American Academy of Dermatology v. Dep't of Health and Human Services*, 118 F.3d 1495, 1498-99 (11th Cir. 1997)(holding that the sole avenue for judicial review of all claims related to benefits processing arising under the Medicare Act is 42 U.S.C. § 405(g) and, further, that claims for declaratory and injunctive relief were inextricably intertwined with and essentially constituted a request for payment of benefits); *Bodimetric Health Servs., Inc. v. Aetna Life & Casualty*, 903 F.2d 480, 483 (7th Cir.

1990)(holding that Bodimetric's state law tort and contract claims arising out of defendant's denial of services arose under the Medicare Act and were governed by the administrative review procedures because the claims were inextricably intertwined with Bodimetric's claims for Medicare benefits); *Midland Psychiatric Associates, Inc. v. United States*, 969 F. Supp. 543 (W.D. Mo. 1997)(tortious interference and negligent supervision claims "arose under" Medicare Act and were subject to the Act's administrative review process). In this case, however, the Vincents do not claim that defendants wrongfully refused to pay for Medicare benefits that were due. According to the complaint, the Vincents' claims arise out of the allegedly fraudulent conduct of defendant Wood in inducing the Vincents to exchange their existing coverage for defendants' plan which did not provide coverage for their home health care services.

The court finds that plaintiffs' claims are similar to the tort claims remanded to state court in *Ardary v. Aetna Health Plans of California, Inc.*, 98 F.3d 496 (9th Cir. 1996). In *Ardary*, the heirs of a deceased Medicare beneficiary brought a state law wrongful death action against a private Medicare provider, claiming that the Medicare provider improperly denied emergency medical services and misrepresented its managed care plan to the beneficiary. *Ardary*, 98 F.3d at 497-98. Although the complaint did not seek recovery of Medicare benefits, the plaintiffs conceded that their claims were all predicated on defendant provider's failure to authorize an emergency airlift. *Id.* at 498. The defendants removed the case to federal court, claiming that the plaintiffs' claims all related to the denial of Medicare benefits and therefore were preempted by the Medicare Act.

The Ninth Circuit found that the plaintiffs' claims were not preempted by the Medicare

Act. The opinion explains that "the claims are not 'inextricably intertwined' because the Ardarys are *at bottom* not seeking to recover *benefits*." *Id.* at 500. The opinion further states: "Aside from the conclusion that the Ardarys' state law tort claims are not 'inextricably intertwined' with benefit determinations, Cynthia's death also cannot be remedied by the retroactive authorization or payment of the airlift transfer." *Id.* The *Ardary* opinion concludes that private Medicare providers and their representatives can be held responsible in their individual capacity for tortious acts committed in the context of the denial of Medicare benefits. *Id.* at 501.

Although the Vincents do not assert wrongful death claims, their claims do resemble those of the plaintiffs in *Ardary*. The Vincents, like the *Ardary* plaintiffs, are not *at bottom* seeking Medicare benefits. As stated in the complaint, they seek to hold defendants liable for alleged fraudulent misrepresentations made prior to the time Ms. Vincent's claims for Medicare benefits arose. Furthermore, the Vincents' alleged injury will not be remedied by the retroactive payment of Medicare benefits. Although the Vincents' damages may in part be measured by the amount of their bills that were not covered by the plan, the Vincents primarily seek compensation for alleged anxiety and emotional distress caused by defendants' conduct in soliciting them to change plans, and damages for fraud, including punitive damages. Like the claims in *Ardary*, plaintiffs' claims are not "inextricably intertwined" with a claim for benefits provided by the Medicare Act.

Another case closely on point is *Wartenberg v. Aetna U.S. Healthcare, Inc.*, No. CIV.A. 97-CIV3536 (DGT), 1998 WL 185416 (E.D.N.Y. April 13, 1998). The plaintiff in *Wartenberg* claimed that an HMO had wrongfully discharged his aunt from various hospitals

7

and skilled care facilities, resulting in his aunt's death. In remanding the action to state court the court noted that "nothing in *Heckler v. Ringer* . . . compels a reading of the phrase 'arising under' which would encompass all state law claims, especially when those claims do not seek a reimbursement of Medicare benefits." *Wartenberg*, 1998 WL 185416 at *4.

The court further finds that the facts in this case closely resemble the facts in *Morstein v. National Insurance Services, Inc.*, 93 F.3d 715 (11th Cir. 1996). Although *Morstein* involves federal preemption under the Employee Retirement Income Security Act ('ERISA") rather than the Medicare Act,[2] an analysis of the Eleventh Circuit's *Morstein* opinion is helpful in analyzing the Vincents' claims.

In *Morstein*, the plaintiff brought suit in state court against an independent insurance agent and the insurer for fraudulent inducement to purchase and negligence in processing her application for an ERISA-governed insurance plan. *Morstein*, 93 F.3d at 716-17. The defendant removed the case to federal court, and the District Court granted summary judgment in favor of defendants. *Id.* at 717. The Eleventh Circuit reversed, finding that ERISA did not preempt the plaintiff's claims. As the *Morstein* opinion explains: "Although the remedy sought may affect the plan in that Morstein's damages (should she successfully prevail on her claims) against Hankins and/or the Shaw Agency may be measured based on what she would have

---

[2] The court notes that, in the context of ERISA preemption, all claims which "relate to" an ERISA-governed employment benefit plan are preempted. In contrast, in analyzing Medicare-related claims, preemption applies only to all claims which "arise under" the Medicare Act. In light of this distinction, and Congress's intent that ERISA preemption apply broadly, the logical conclusion is that ERISA preempts more broadly than the Medicare Act. Therefore, because non-preemption in an ERISA case implies non-preemption in a factually similar Medicare case, a comparison of *Morstein's* preemption analysis with the jurisdictional issues presented in the current case is particularly appropriate.

received under her old plan, such indirect relation between a beneficiary and the plan is not enough for preemption." *Id.* at 723. The opinion further explains why preemption in the context of an insurance agent's alleged fraudulent misrepresentation would not serve the goals of the statute:

> If ERISA preempts a beneficiary's potential cause of action for misrepresentation, employees, beneficiaries, and employers choosing among various plans will no longer be able to rely on the representations of the insurance agent regarding the terms of the plan. These employees, whom Congress sought to protect, will find themselves unable to make informed choices regarding available benefit plans where state law places the duty on agents to deal honestly with applicants.

*Id.* at 723-24. This reasoning applies with equal force to the plaintiffs' cause of action in the current case. There is no reason to assume that Congress, in enacting the Medicare Act, intended to deprive beneficiaries of the right to bring suit in state court for the tortious conduct of HMOs and their agents.

The Eleventh Circuit's finding of non-preemption in *Morstein* suggests that the Vincents' claims should not be preempted. Just as the plaintiff in *Morstein* alleged that an agent of one of the defendants fraudulently induced her to buy an ERISA benefits plan, the Vincents claim that defendant Wood, as an agent of defendant Medicare Complete, fraudulently misrepresented to them the terms of the Medicare plan he allegedly induced them to buy.

Finally, the court is unpersuaded that the case of *Frank E. Body v. Blue Cross and Blue Shield of Alabama, Inc.*, No. 95-6429, 1998 WL 339553 (11th Cir. June 26, 1998) is helpful to defendants' position. As noted in Body: "The Supreme Court . . . has not sought to extend

the reach of subsection 405(h) to bar claims that, although they may implicate benefits determinations, are certainly not veiled claims for benefits by a disgruntled beneficiary that could have, and should have, been pursued administratively in the first instance." *Body*, 1998 WL 339553 at *11. As discussed above, although plaintiffs' claims "may implicate benefit determinations," they are not in essence claims that "could have, and should have, been pursued administratively in the first instance."

## CONCLUSION

The court finds that plaintiffs' tort claims are not inextricably intertwined with a claim for benefits and therefore do not arise under the Medicare Act. On the basis of this finding, the court concludes that removal was improper and this case is due to be remanded to the Circuit Court for Jefferson County, Alabama. An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this 10th day of August, 1998.

*Sharon Lovelace Blackburn*
**SHARON LOVELACE BLACKBURN**
United States District Judge